# Real Estate Investment Company's Assigned Estate.

*Assignment for creditors—Distribution—Contract—Compromise—Valuation of property.*

Where a debtor agrees, in compromise of a claim which he deems exorbi-tant, to transfer to his creditor houses and stock of a corporation at a valuation, which the agreement on its face shows is in excess of the market value, and before the agreement is executed, the debtor makes an assign-ment for creditors, the creditor on distribution will be entitled to a dividend only upon the market value of the houses and stock, and not upon the valuation stated in the agreement.

Argued March 21, 1906. Appeal, No. 80, Jan. T., 1906, by William J. Murphy, from order of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 140, dismissing exceptions to auditor's re-port in Assigned Estate of the Real Estate Investment Com-pany. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Affirmed.

Exceptions to report of Sheldon Potter, Esq., auditor.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Ormond Rambo*, for appellant.—The measure of damages was the amount agreed to be paid at the agreed value of the houses, stock and cash, less the amount paid on account in houses, stock and cash: Singerly v. Armstrong, 5 W. N. C. 139; Roberts v. Beatty, 2 P. & W. 63; Church v. Feterow, 2 P. & W. 301; Moore v. Kiff, 78 Pa. 96; Fleming v. Potter, 7 Watts, 380; Stewart v. Morrow, 1 Grant, 204.

*Thomas Ridgway*, for assignee.

*Richard S. Hunter* and *George Harrison Fisher*, for creditors.

OPINION BY MR. JUSTICE STEWART, April 30, 1906:

This case requires little more than a brief statement of facts. Appellant claimed that there was due him from the Real Estate Investment Company $26,459.92 for work and material furnished by him, in connection with the construction and erection of what is known as the Lincoln Apartment House in the city of Philadelphia. The company disputed the claim, alleging that there was included in it a large amount properly chargeable to the account of other buildings for which it was not responsible. A settlement was effected and reduced to writing. The writing recites that the parties "had finally agreed to compromise, adjust and settle all their difficulties." Under this agreement appellant was to receive in cash and notes $7,959.92; 700 shares of the capital stock of the investment company at a valuation of $3,500; and fifteen houses on Titan street at a valuation of $15,000; appellant agreeing to save harmless the investment company from all mechanics' liens, and procure release from such liens as had been filed. There is no dispute with respect to the cash and notes which the appellant was to receive; these items of obligation have been discharged. To facilitate the extinguishment of the mechanics' liens, the investment company with appellant's consent conveyed in satisfaction of certain of them, seven of the houses which it had agreed to give to appellant by way of compromise, and also 220 shares of the stock that he was entitled to get; but it was not until November, 1899, that the building was wholly released. Then for the first time, appellant was in position to demand the consideration agreed upon in the settle-

ment. But meanwhile the company, presumably because of financial embarrassment, had sold the remaining eight houses and was not in position to comply with the terms of settlement. In November, 1900, the investment company assigned for the benefit of creditors. The present proceeding is in connection with the distribution of the balance in the hands of the trustee; whether upon settlement of a partial or final account, does not appear. Appellant asks distribution on the basis of the agreement of settlement between himself and the investment company; that is to say, not having received the eight remaining houses, or the 480 shares of stock unapplied, he claims distribution on a principal sum determined on the valuation at which he agreed to accept the houses and the stock. The auditor allowed the claim, and made distribution accordingly; but on exceptions, the report was referred back with directions to ascertain the actual value of the houses and stock, and make a distribution on that basis; the court holding that appellant was a creditor for houses and stock which should have been transferred to him in November, 1899; that the transfer not having been made to him, he was entitled to share in the distribution of the assigned estate to the extent of the dividend of the value upon the property. Upon the second hearing before the auditor, appellant declined to offer any evidence as to the value of houses or stock, insisting that the agreement of settlement determined the value of each article of property, and that he was entitled to distribution on the basis of the valuation therein. The auditor having nothing before him from which he could ascertain the damages resulting to appellant, from the failure of the investment company to carry out its agreement of settlement, disallowed the claim. This appeal is from the action of the court in affirming the action of the auditor. If it results that appellant gets nothing out of the assigned estate, he will have only himself to blame. He had either of two courses to adopt with safety to himself; he could have submitted his original claim against the investment company, reduced by the proper credits, as a basis for distribution; or the agreement of settlement. He chose the latter, and this entitled him to a distribution on the basis of the market value of the property that had been withheld from him, as of the day when he was entitled to demand it. But evidently the prices

at which he was to receive the property were not the market value ; otherwise there was no compromise in the arrangement. He had claimed from the company an amount largely in excess of what the company had admitted was owing him. A compromise was effected, on the strength of his agreeing to accept in part payment, the specified property at an artificial valuation, which brought the entire consideration in correspondence with the amount of his claim. No other meaning can be derived from the agreement of settlement. Under such circumstances, the stipulated amount can reflect no light upon the market value, and could not in any way relieve the appellant of the burden that was on him to show what that market value was. At most, an agreement as to price, as in this case, can only be used in evidence for the purpose of showing value, on the ground that it is an admission by the party sought to be charged. But on the face of this agreement, it clearly appears that the price at which appellant was to take the property was not determined by its market value, but by the amount of what the investment company regarded as an exorbitant and unjust demand on the part of the appellant. In no sense can it be regarded as an admission that the price stipulated for was the market value of the property. Principle and reason are against allowing it to be regarded as evidence of market value ; and it would be most unjust to other creditors of the insolvent concern to allow the appellant's demand in this regard. It is to be hoped that he may yet have an opportunity to correct his mistake in another distribution ; but however this may be, the action of the court below in this connection is free from error and the decree is affirmed.